Henry M. Lee, California Bar No. 156041
Robert Myong, California Bar No. 262097
HENRY M. LEE, LAW CORPORATION
3530 Wilshire Boulevard, Suite 1710
Los Angeles, California  90010
(213) 382 -0955
(213) 382-0956 Facsimile

Attorneys for Plaintiff
Michael Chung

# U.S. BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>KEITH J. KIM<br>JANICE S. KIM<br><br>Debtors<br>_____<br><br>MICHAEL CHUNG,<br><br>Plaintiff;<br><br>v.<br><br>KEITH KIM, and JANICE KIM,<br><br>Defendants. | CASE NO.: 11-bk-49539<br><br>A.P. NO.: 11-4344<br><br>Ch. 7<br><br>[The Hon. Roger L. Efremsky]<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. SECTION 523(a)(2) AND (4)** |

Plaintiff Michael Chung hereby alleges the following:

### VENUE

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Section 157(a), 157(b) and 1334, and 11 U.S.C. Section 523.

-1-

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Keith J. Kim and Janice S. Kim | BANKRUPTCY CASE NO.<br>11-bk-49539 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern | DIVISION OFFICE<br>Oakland | NAME OF JUDGE<br>Roger Efremsky |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

2. This is a core proceeding. This adversary proceeding is being brought in connection with defendants/debtors Keith Kim and Janice Kim's bankruptcy case under Chapter 7 of the United States Bankruptcy Code, Case Number 11-49539 now pending in the United States Bankruptcy Court for the Northern District of California, Oakland Division.

3. This is an adversary proceeding to determine the dischargeability of a debt owed by Keith Kim to Michael Chung.

<u>**PARTIES**</u>

5. Defendant Keith Kim ("Defendant") is an individual and a debtor in this Chapter 7 Case.

6. Plaintiff Michael Chung ("Plaintiff") is an individual and creditor of Defendant.

<u>**GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**</u>

7. Plaintiff and Defendant have known each other since high school. Said parties were class mates and established a friendship. The parties maintained their friendship over the years, and from time to time, communicated with each other as close, life-long friends. In or about 1998, Plaintiff resided in Los Angeles County and Defendant resided and conducted business in Northern California, in the San Francisco Bay area. Plaintiff was traveling to Berkeley for his own business purposes. Plaintiff and Defendant met to have a casual meeting. During this meeting, Defendant advised Plaintiff that Defendant had experienced success with his business venture known as Granny Goose and was engaged in various internet ventures, including a venture entitled "mysimon."

8. Several months later, in 1999, Defendant contacted Plaintiff and informed Plaintiff that Defendant's internet project was now entitled BRAINRUSH. Defendant explained that BRAINRUSH invested in several other companies to assist and incubate those companies for operation and profit, sale of the company, and/or public offering. Defendant inquired whether Plaintiff would be interested in investing in the project and invited Plaintiff to Northern California to visit the business offices, meet with management, and to obtain additional information. Plaintiff, based on the close, life-long friendship decided he would further review the opportunity and did travel to the business offices located in Northern California. During this visit, Defendant introduced Plaintiff to various members of management, and provided Plaintiff with an executive

-2-

summary for BRAINRUSH. The executive summary, Defendant, and other management members confirmed that Defendant was the CEO, director, and majority shareholder of BRAINRUSH.

9. Shortly after Plaintiff returned to Los Angeles County, Defendant called Plaintiff again soliciting him to invest in BRAINRUSH. Plaintiff decided that since Defendant was a long time friend, Plaintiff would invest in BRAINRUSH. Defendant thereupon sent Plaintiff a form to provide information about Plaintiff's personal financial condition, which Plaintiff filled out and returned.

10. Defendant thereafter gave Plaintiff instructions to wire his investment to Defendant's company. In or about late 1999, Plaintiff agreed to invest the sum of $1.0 million and wired $1.0 million to Defendant's company. Plaintiff is informed and believes that as a result of Plaintiff's investment, Plaintiff thereupon became a shareholder and investor of Defendant's company. Defendant represented, and Plaintiff is informed and believes, that Defendant was an officer, director, and majority shareholder of BRAINRUSH. As a shareholder and investor of BRAINRUSH, Plaintiff alleges Defendant, an officer, director and majority shareholder, owed a fiduciary duty of the highest degree to Plaintiff, a minority shareholder. Plaintiff alleges that Defendant was required to disclose to Plaintiff, the details of all transactions affecting Plaintiff's investment, including but not limited to an accounting of the receipt, distribution, and use of all monies involved with the project.

11. In or about late 2000, Plaintiff read a news article which stated that one of the BRAINRUSH companies had been sold for $70. Plaintiff was surprised and very excited to learn the news, and contacted Defendant to learn about the details of the transaction. When Plaintiff contacted Defendant, he confirmed the transaction and further confirmed the proceeds of the sale were in fact estimated at $70 million.

12. When Plaintiff inquired as to when any profits from the sale would be distributed, Defendant stated that all investors would have to wait a few months for the company to prepare financial statements and records to document the transaction and revenues. Several months later, and into the year 2001, Plaintiff made several requests for the status of the financial records.

-3-

Defendant's response was the accounting had not yet been completed and to wait. Because Plaintiff and Defendant had been friends for so long, Plaintiff had no reason to believe Defendant's representations were false, and waited. Plaintiff is informed and believes and based on such information and belief alleges that on or about March of 2001 Defendant and other corporate officers, directors and majority shareholders of BRAINRUSH conspired to defraud Plaintiff by falsely creating a story that the company had lost a significant amount of money and that there were no profits left to be distributed to Plaintiff.

13.     In or about mid 2001, in response to Plaintiff's repeated inquiries as to what happened to the $70 million, Defendant stated there were no profits and that the company had suffered significant losses and the funds were used to offset those losses, so there was nothing left of the $70 million to distribute to the investors. Plaintiff was surprised to learn about such losses, especially since Defendant had not provided Plaintiff with any financial information relative to BRAINRUSH's overall financial condition. Again, Plaintiff had no reason at this point to believe the Defendant's representations were false because Defendant was Plaintiff's close, life-long friend. Plaintiff thereupon again requested to review the financial records which reflected such enormous losses, and the expenditure of the $70 million. Defendant responded that the company's Chief Financial Officer ("CFO") had lost the financial records; therefore, Defendant could not provide Plaintiff with the requested financial accounting. Over the course of several months, Plaintiff repeatedly asked for the documents; however, Defendant responded with the same excuses for his continued delays, that the accounting had not been completed because the CFO had lost the financial records. Defendant finally provided piecemeal documents, which consisted of a few pages of bank information and a financial statement that had no supporting documents.

14.     After repeated failed attempts at obtaining the financial information, in or about late 2001, Plaintiff heard rumors that Defendant and another officer/director/majority shareholder had personally taken significant portions, if not all, of the entire $70 million. Plaintiff confronted the other officer/director/majority shareholder about the missing money, and was advised that

-4-

1   Defendant had used the proceeds from the $70 million to pay back a personal loan owed to the .

2   officer/director/majority shareholder.

3       15.     Plaintiff thereupon confronted Defendant and again demanded an accounting of the

4   $70 million. Plaintiff also advised Defendant that he intended to sue if Defendant and

5   BRAINRUSH continued to withhold the documents from him. Defendant responded that

6   Defendant was currently being investigated by the Securities Exchange Commission ("SEC") for

7   insider trading and begged Plaintiff not to sue. Defendant also represented that if Plaintiff would

8   wait a few months, Defendant would return Plaintiff's $1.0 million investment.

9       16.     After waiting several months, and not receiving return of his $1.0 million investment,

10  Plaintiff again advised Defendant that he intended to sue Defendant to obtain the records.

11  Defendant again pleaded with Plaintiff not to sue stating that the SEC investigation had not been

12  completed, and that Defendant was using all of his financial resources to defend against the SEC

13  investigation. Defendant also repeated that it was not his fault that the financial records were not

14  available because the CFO had lost all of the records. Defendant also denied that he had

15  personally used or taken any money for his personal use, and further denied the allegations that

16  Defendant withdrew money to repay a personal loan. Defendant asked Plaintiff, as a friend, to

17  believe what he was saying and not to sue. Defendant also offered that if Plaintiff agreed not to

18  sue Defendant at that time, Defendant would give Plaintiff a promissory note, personally agreeing

19  to repay Plaintiff his entire investment in full within five years.

20      17.     Because of their friendship and in reliance on Defendant's representations that he was

21  in the midst of an investigation as to other unrelated securities matters, that Defendant had not

22  used or taken any of the transaction proceeds for his personal use, Plaintiff agreed not to sue

23  Defendant at that time, accepted the written promissory note. **Exhibit A**. On or about

24  November 1, 2002, Plaintiff and Defendant executed a written promissory note, the basic terms of

25  which were that Defendant would repay Plaintiff the sum of $1.0 million, payment of which was

26  due in five years, on December 31, 2007.

27      18.     In or about early December of 2007, Plaintiff contacted Defendant and reminded him

28  that the promissory note was due and payable on December 31, 2007. Defendant responded that

-5-

since it had been such a long time, that Plaintiff should just forget the debt. Plaintiff informed Defendant that he would not simply forget about the debt owed to Plaintiff based on Defendant's earlier false representations and fraud.

19. On June 4, 2008, Plaintiff filed a complaint in Los Angeles Superior Court for breach of contract, fraud, securities violations, and breach of fiduciary duty against Defendant and others, entitled *Chung v. Kim, et al.*, Case No. BC 392047. **Exhibit B**. Default was entered against Defendant on December 30, 2010. **Exhibit C**. On May 9, 2011, trial against the remaining defendants was completed. On October 20, 2011, a default judgment was entered against the other defaulted defendant. **Exhibit D**. Plaintiff has requested relief from the automatic stay so that the default judgment can be entered against Defendant in the state court action for fraud, breach of contract, breach of fiduciary duty, and securities violations.

**FIRST CLAIM FOR RELIEF**

**TO DETERMINE THE DISCHARGEABILITY OF DEBTS FOR PROPERTY**

**OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL**

**FRAUD**

20. Plaintiff incorporates each and every allegation set forth in Paragraphs 1 - 19 above, as though fully set forth herein.

21. On the date of the filing of the petition in bankruptcy, Plaintiff was and now is a creditor of Defendant.

22. Plaintiff alleges that Defendant, made the following material representations to Plaintiff.:

    a. When Plaintiff inquired as to when any profits from the $70 million sale would be distributed, Defendant stated that all investors would have to wait a few months for the company to prepare financial statements and records to document the transaction and revenues.

    b. In or about mid 2001, Defendant stated there were no profits from the $70 million transaction. Instead, Defendant represented the company had suffered significant

-6-

losses and the $70 million was used to offset those losses, so there was nothing left to distribute to investors.

d. Defendant represented to Plaintiff that the SEC was investigating Defendant and that Defendant was using all of his financial resources to pay for lawyers fees in response to the SEC investigation.

e. Defendant denied that he had personally used or taken any part of the $70 million for his personal use, and further denied the allegations that Defendant used a portion of the $70 million to repay a personal loan.

f. Defendant promised to repay Plaintiff's $1.0 million investment.

23. The representations made by Defendant were false and Defendant knew said representations were false.

24. Defendant had a duty of full disclosure and honesty to Plaintiff.

25. At the time, Plaintiff did not have reason to suspect Defendant's representations were false because all information regarding the BRAINRUSH's finances were controlled, retained and remained in Defendant's possession. Defendant was also Plaintiff's close, long time friend and Plaintiff had no reason to believe Defendant would be lying.

26. Plaintiff now knows that Defendant's plan from the outset was to defraud Plaintiff of his money, and further plan to defraud him to delay filing a civil lawsuit against Defendant.

27. Defendant unlawfully used Plaintiff's money with full knowledge of the consequence that Plaintiff would suffer due to Defendant's fraud.

28. Defendant intended Plaintiff to rely on said representations, and in fact, Plaintiff did rely upon Defendant's representations.

29. As a direct result of Defendant's representations, Plaintiff gave money to Defendant.

30. Plaintiff was harmed by the representations of Defendant. Plaintiff has been damaged in the full amount they he gave to Defendant that has not been returned, plus interest, fees and costs.

-7-

31. In making the representations herein alleged, Defendant acted despicably with oppression, fraud and malice, entitling Plaintiff to punitive damages in the amount according to proof at trial.

32. The damages suffered by Plaintiff are nondischargeable under Bankruptcy Code section 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF
## TO DETERMINE THE DISCHARGEABILITY OF DEBTS FOR PROPERTY
## OBTAINED BY FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY
## CAPACITY

33. Plaintiff incorporates each and every allegation set forth in Paragraphs 1 - 32 above, as though fully set forth herein.

34. As a shareholder and investor of BRAINRUSH, Plaintiff alleges Defendant, an officer, director and majority shareholder, owed a fiduciary duty of the highest degree to Plaintiff, a minority shareholder. Plaintiff alleges that Defendant was required to disclose to Plaintiff, the details of all transactions affecting Plaintiff's investment, including but not limited to an accounting of the receipt, distribution, and use of all monies involved.

35. Plaintiff alleges that Defendant had a duty to disclose and failed to disclose the following material facts:

    a. That one of the BRAINRUSH assets was going to be sold for $70 million;

    b. The terms of the sale, the monies received from sale, provide an accounting for the sales proceeds, financial information as to the sale transaction and as to the entire company;

    c. That Defendant and other officers, directors and majority shareholders had taken all or a portion of the sales proceeds;

    d. That Defendant and other officers, directors and majority shareholders had taken all or a portion of Plaintiff's $1.0 million;

-8-

e. That an officer was being investigated for securities fraud, that an officer was being sued/pursued for engaging in fraudulent transactions involving the sale of an unrelated business entity,   .

36. In making the representations herein alleged, Defendant acted despicably with oppression, fraud and malice, entitling Plaintiff to punitive damages in the amount according to proof at trial.

37. The damages suffered by Plaintiff are nondischargeable under Bankruptcy Code section 523(a)(4).

### THIRD CLAIM FOR RELIEF
### TO DETERMINE THE DISCHARGEABILITY OF DEBTS FOR PROPERTY
### OBTAINED BY USE OF A WRITING THAT IS MATERIALLY FALSE

38. Plaintiff incorporates each and every allegation set forth in Paragraphs 1 - 37 above, as though fully set forth herein.

39. On or about November 1, 2002, Plaintiff and Defendant executed a written promissory note, the basic terms of which were that Defendant would repay Plaintiff the sum of $1.0 million, payment of which was due in five years, on December 31, 2007.

40. On December 31, 2007, Defendant failed fulfill his obligations under the promissory note. Plaintiff alleges that Defendant never had any intention of repaying Plaintiff's $1.0 million investment. Instead, Plaintiff alleges that Defendant used the promissory note to delay Plaintiff's filing of a lawsuit and to further defraud Plaintiff of his rights and remedies under the law.

41. In making the representations herein alleged, Defendant acted despicably with oppression, fraud and malice, entitling Plaintiff to punitive damages in the amount according to proof at trial.

The damages suffered by Plaintiff are nondischargeable under Bankruptcy Code section 523(a)(2)(B)(i).


**WHEREFORE PLAINTIFF RESPECTFULLY REQUESTS THIS COURT:**

-9-

1. Determine that Defendant's obligations, damages or debt to Plaintiff is nondischargeable pursuant to 11 U.S.C. section 523(a)(2) and (4);

2. For damages on all claims according to proof;

3. For interest, costs, and attorneys fees pursuant to statute or agreement;

4. For such other and further relief as the Court deems just and proper.

DATED: November 20, 2011

Respectfully submitted,

HENRY M. LEE LAW CORPORATION

By:        /s/ Robert Myong
Henry M. Lee
Robert Myong
Attorneys for Plaintiff

-10-

# EXHIBIT A

# PROMISSORY NOTE

$1,000,000                                               November 1, 2002

For value received, Keith J. Kim (the "Debtor") promises to pay to Michael Chung (the "Holder"), the principal sum of One Million Dollars ($1,000,000). This Note is subject to the following terms and conditions.

1.     **Maturity.**  This Note will automatically mature and be due and payable on December 31, 2007 (the "Maturity Date").

2.     **Payment.**  Except as set forth herein, all payments shall be made in lawful money of the United States of America at such place as the Holder hereof may from time to time designate in writing to the.  This Note may be prepaid without the prior consent of the Holder.

3.     **Transfer; Successors and Assigns.**  The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Notwithstanding the foregoing, the Holder may not assign, pledge, or otherwise transfer this Note without the prior written consent of the Debtor.  Subject to the preceding sentence, this Note may be transferred only upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Holder.  Thereupon, a new note for the same principal amount and interest will be issued to, and registered in the name of, the transferee.

4.     **Governing Law.**  This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law.

5.     **Notices.**  Any notice required or permitted by this Note shall be in writing and shall be deemed sufficient upon delivery, when delivered personally or by a nationally-recognized delivery service (such as Federal Express or UPS), or forty-eight (48) hours after being deposited in the U.S. mail, as certified or registered mail, with postage prepaid, addressed to the party to be notified at such party's address as set forth below or as subsequently modified by written notice.

6.     **Amendments and Waivers.**  Any term of this Note may be amended only with the written consent of the Debtor.  Any amendment or waiver effected in accordance with this Section 8 shall be binding upon the Debtor, the Holder and each transferee of the Note.

*[Signature Page Follows]*

417714v2.doc



Case: 11-49539    Doc# 34    Filed: 11/29/11    Entered: 11/29/11 16:25:04    Page 13 of 43

IN WITNESS WHEREOF, the Debtor has caused this Note to be duly executed and delivered as of the date first above written.

DEBTOR:

Keith J. Kim

_____

AGREED TO AND ACCEPTED:

MICHAEL CHUNG

_____

SIGNATURE PAGE TO PROMISSORY NOTE

# EXHIBIT B

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 0 4 2008

John A. Clarke, Executive Officer/Clerk
BY MARY GARCIA, Deputy

1  Henry M. Lee, Bar No. 156041
   Douglas Han, Bar No. 232858
2  HENRY M. LEE LAW CORPORATION
   3530 Wilshire Blvd., Suite 1710
3  Los Angeles, CA 90010
   (213) 382-0955
4
   Attorneys for Plaintiff
5  MICHAEL CHUNG

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10
   MICHAEL CHUNG an individual,    )   CASE NO.:  BC392047
11                                 )
             Plaintiff,            )   **COMPLAINT FOR DAMAGES**
12                                 )   **FOR:**
   vs.                             )
13                                 )   **BREACH OF CONTRACT;**
                                   )   **INTENTIONAL**
14 KEITH KIM an individual; DOUGLAS)   **MISREPRESENTATION;**
   PARK, an individual; STEVEN     )   **FAILURE TO DISCLOSE**
15 BOOKSPAN, an individual;        )   **MATERIAL FACTS/BREACH OF**
   BRAINRUSH, INC., a suspended    )   **FIDUCIARY DUTY;**
16 corporation; BRAINRUSH          )   **SECURITIES VIOLATIONS;**
   VENTURES, LLC, a California limited ) **CONVERSION;**
17 liability company; BRAINRUSH    )   **FRAUDULENT TRANSFERS**
   VENTURES MANAGEMENT, LLC, a     )
18 California limited liability company; )
   DOES 1 through 100, inclusive   )
19                                 )
             Defendants.           )
20 _____)

21

22                  **GENERAL ALLEGATIONS**

23      Plaintiff MICHAEL CHUNG hereby alleges, avers and complains as follows:

        1.    Plaintiff MICHAEL CHUNG ("Plaintiff") is an individual residing in the County
24
   of Los Angeles, State of California.
25
        2.    Plaintiff is informed and believes that Defendant DOUGLAS PARK is an
26
   individual residing in the County of Los Angeles, State of California.  Defendants KEITH KIM
27
   and STEVEN BOOKSPAN ("CFO") are individuals residing in the County of Oakland, State of
28

California. Plaintiff is informed and believes that Defendants BRAINRUSH VENTURES, LLC ("BV") and BRAINRUSH VENTURES MANAGEMENT, LLC ("BVM") are limited liability companies duly formed under the laws of the State of California and at the time of the transactions set forth herein, maintained their principal places of business with offices within the County of Los Angeles, State of California. Plaintiff alleges that all representations, transactions, and performance of the agreements set forth herein were to be performed in the County of Los Angeles, State of California and therefore proper venue lies with the Superior Court of the State of California, County of Los Angeles. Plaintiff is informed and believes and alleges that BRAINRUSH, INC. (also referred to herein as "BRAINRUSH") is a corporate entity, which may no longer exist and/or is suspended, but which at the time of the transactions alleged herein, is believed to have been a corporate entity which maintained its principal place of business within the County of Los Angeles, State of California.

3. The true names and capacities, whether individual, corporate, associate, or otherwise, of cross defendants designated as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Each of the DOE defendants is negligently or otherwise legally responsible in some manner for the events and happenings which proximately caused damages to Plaintiff, as herein alleged. Plaintiff will ask leave of court to amend this Complaint to allege their true names and capacities when the same have been ascertained.

4. At all times mentioned herein, Defendants, and each of them, were the agents, representatives, employees, successors and/or assigns, each of the other, and were acting within the course and scope of their authority as such agents, representatives, employees, successors and/or assigns, and each Defendant ratified and approved the acts of its, his or her agent, and/or that of the remaining Cross Defendants, and each of them.

5. Plaintiff is informed and believes and thereon alleges that Defendant KEITH KIM and DOES 1-50 and each of them, on the one hand, are and at all times herein mentioned were, the alter egos of BRAINRUSH, INC. and DOES 51-100, and each of them, on the other hand, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership

- 2 -

1   between Defendants, and each of them, such that any separateness between them has ceased to

2   exist, in that said Defendant, and each of them, completely controlled, dominated, managed, and

3   operated BRAINRUSH, INC. and DOES 51-100 and also used assets of same for their personal

4   uses, caused assets of the corporations to be transferred to them without adequate consideration,

5   and withdrew funds from the corporations' bank accounts for their personal uses, and failed to

6   maintain the separateness and separate existence of the corporate entity.

7         6.     Plaintiff is further informed and believes and thereon alleges that BRAINRUSH,

8   INC. is and at all times herein mentioned was, a mere shell, instrumentality, and conduit through

9   which Defendant KEITH KIM, and each of them, on the other hand, carried on their business in

10   the corporate names exercising complete control and dominance of such business to such an

11   extent that any individuality or separateness does not and at all times herein mentioned did not

12   exist. In doing the acts as herein alleged, the Defendants, and each of them, ratified, accepted

13   and approved of the acts, omissions and representations of the other Defendants personally

14   benefitting therefrom.

15         7.     Plaintiff and Defendant's have known each other since high school. Said parties

16   were class mates and established a friendship. The parties maintained their friendship over the

17   years, and from time to time, communicated with each other as friends. In or about 1998,

18   Plaintiff resided in Los Angeles County and Defendant resided and conducted business in

19   Northern California, in the Bay area. Plaintiff was traveling to Berkeley for his own business

20   purposes. Plaintiff and Defendant, still friends at the time, met to have a casual meeting. During

21   this meeting, Defendant Keith Kim advised Plaintiff that Defendant had experienced success

22   with his business venture known as Granny Goose and was engaged in various internet ventures,

23   including a venture entitled "mysimon." Plaintiff and Defendant further discussed their business

24   affairs at the time, and ended their initial casual meeting.

25         8.     Several months later, approximately into the year 1999, Defendant contacted

26   Plaintiff while Plaintiff was in Los Angeles County. Defendant specifically represented to

27   Plaintiff that Defendant's internet project was now entitled BRAINRUSH. Defendant explained

28   that BRAINRUSH invested in several other companies to assist and incubate those companies

- 3 -

1   for operation and profit, sale of the company, and/or public offering. Defendant inquired whether

2   Plaintiff would be interested in investing in the project and invited Plaintiff to Northern

3   California to visit the business offices, meet with management members, and to obtain additional

4   information. Plaintiff, based on the friendship, representations about Defendant's business

5   success, decided he would further review the opportunity and did travel to the business offices

6   located in Northern California. While on his visit, Defendant introduced Plaintiff to various

7   members of management, and provided Plaintiff with an executive summary for BRAINRUSH.

8   The executive summary, Defendant, and other management members confirmed that Defendant

9   KEITH KIM was the CEO, director, and majority shareholder of BRAINRUSH.

10          9.      Several days after his return to Los Angeles County, Defendant called Plaintiff

11  again soliciting him to invest in BRAINRUSH. Plaintiff decided that since Defendant was a long

12  time friend, represented success with the Granny Goose venture, and his visit to the business

13  offices, Plaintiff would invest and advised Defendant he would proceed. Defendant thereupon

14  sent Plaintiff a form to provide information about Plaintiff's personal financial condition, which

15  Plaintiff filled out and returned.

16          10.     Defendant thereafter gave Plaintiff instructions to wire transfer his investment to

17  Defendant's company. In or about late 1999, Plaintiff agreed to invest the sum of $1.0 million,

18  and did wire transfer the total sum to Defendant's company. Plaintiff is informed and believes

19  that as a result of Plaintiff's investment, Plaintiff thereupon became a shareholder and investor of

20  Defendant's company. Defendant represented, and Plaintiff is informed and believes, that

21  Defendant was an officer, director, and majority shareholder of BRAINRUSH. As a shareholder

22  and investor of BRAINRUSH, Plaintiff alleges Defendant, an officer, director and majority

23  shareholder, owed a fiduciary duty of the highest degree to Plaintiff, a minority shareholder.

24  Plaintiff alleges that Defendant was required to disclose to Plaintiff, the details of all transactions

25  affecting Plaintiff's investment, including but not limited to an accounting of the receipt,

26  distribution, use of all monies involved with the project.

27          11.     In or about mid 2000, Plaintiff read a news article which stated that one of the

28  BRAINRUSH companies had been sold for a significant sum, with BRAINRUSH to receive an

- 4 -

1  estimated $70 million.  Plaintiff was surprised and very excited to learn the news, and contacted

2  Defendant to learn about the details of the transaction.  When Plaintiff contacted Defendant, he

3  confirmed the transaction and further confirmed the proceeds of the sale were in fact estimated at

4  $70 million.

5         12.     When Plaintiff inquired as to when any profits from the sale would be distributed,

6  Defendant stated that all investors would have to wait a few months for the company to prepare

7  financial statements and records to document the transaction and revenues.  Several months later,

8  and into the year 2001, Plaintiff made several requests for the status of the financial records.

9  Defendant's response was the accounting had not yet been completed and to wait.  Because

10  Plaintiff and Defendant had been friends for so long, Plaintiff had no reason to believe

11  Defendant's representations were false, and waited.  After waiting several week without

12  responses, Plaintiff continued to ask from time to time and received the same response as an

13  excuse for the delays.

14         13.     Finally, in or about mid 2001, after repeated insistence as to what happened to the

15  money, Defendant stated there were no profits from the $70 million transaction.  Instead, the

16  company had suffered significant losses and the funds were used to offset those losses, so there

17  was nothing from the transaction left to distribute as profits to the investors.  Plaintiff was

18  surprised to learn about such losses, especially since Defendant had not provided Plaintiff with

19  any financial information relative to the BRAINRUSH overall financial condition.  Again,

20  Plaintiff had no reason at this point to believe the Defendant's representations were false because

21  Defendant was Plaintiff's friend and also because BRAINRUSH did have other companies which

22  it was incubating and/or had invested in.   Plaintiff thereupon requested to review the financial

23  records which reflected such enormous losses, and distribution of the $70 million.  Defendant

24  responded that the company's CFO had lost the financial records; therefore, Defendant could not

25  provide Plaintiff with the requested financial accounting.  Over the course of several months,

26  Plaintiff repeatedly asked for the documents; however, Defendant responded with the same

27  excuses for his continued delays, that the accounting had not been completed because the CFO

28  had lost the financial records.  Defendant did provide piecemeal documents, which documents

- 5 -

1   were simply a few pages of bank information, and prepared financial statement that had no
2   supporting documents.

3       14.    After repeated failed attempts at obtaining the financial information, in or about
4   late 2001, Plaintiff heard rumors that Defendant KEITH KIM and Defendant DOUGLAS PARK
5   had personally taken significant portions, if not all, of the entire $70 million. Plaintiff confronted
6   DOUGLAS PARK about the missing money, and was advised that KEITH KIM had personally
7   taken money from the company because KEITH KIM personally owed money to DOUGLAS
8   PARK. DOUGLAS PARK stated that KEITH KIM had used proceeds from the $70 million to
9   pay the personal loan to DOUGLAS PARK back. Plaintiff alleges that DOUGLAS PARK was
10  also an officer, director and majority shareholder of the BRAINRUSH company, and therefore,
11  said Defendant owed fiduciary duties to Plaintiff as well.

12      15.    Plaintiff thereupon confronted KEITH KIM and again demanded an accounting of
13  all of the $70 million. Plaintiff also advised KEITH KIM that he intended to sue Defendant if he
14  continued to withhold documents from him. Defendant responded that he had been arrested by
15  the FBI, was currently being investigated by the SEC for insider trading securities law violations,
16  and begged Plaintiff not to sue him. Defendant also represented that if Plaintiff could just wait a
17  few months, Defendant would pay Plaintiff his full investment back.

18      16.    After waiting several months, and not receiving return of his investment, Plaintiff
19  again advised Defendant that he intended to sue Defendant to obtain the records. Defendant
20  again pleaded with Plaintiff not to sue stating that the SEC investigation had not been completed,
21  and that Defendant was using all of his financial resources to pay for lawyer fees in response to
22  the SEC investigation. Defendant also repeated that it was not his fault that the financial records
23  were not available because the CFO had lost all of the records. Defendant also denied that he
24  had personally used or taken any money for his personal use, and further denied DOUGLAS
25  PARK's allegations that Defendant withdrew money to pay DOUGLAS PARK a personal loan.
26  Defendant asked Plaintiff, as a friend, to believe what he was saying and not to sue. Defendant
27  also offered that if Plaintiff agreed not to sue Defendant at that time, Defendant would give
28  Plaintiff a promissory note, personally agreeing to repay Plaintiff his entire investment in full

- 6 -

1    within five years.

2        17.    Because of their friendship and in reliance on Defendant's representations that he

3    was in the midst of an investigation as to other unrelated securities matters, that Defendant had

4    not used or taken any of the transaction proceeds for his personal use, Plaintiff agreed not to sue

5    Defendant at that time, accepted the written promissory note.  On or about November 1, 2002,

6    Plaintiff and Defendant executed a written promissory note, the basic terms of which were that

7    KEITH KIM would personally repay Plaintiff the sum of $1.0 million, payment of which was

8    due in five years, on December 31, 2007.  A true and correct copy of the written agreement

9    between Plaintiff and Defendant is attached hereto and incorporated by reference.

10        18.    In or about 2003, Defendant contacted Plaintiff and inquired how Plaintiff's

11   business was going.  Plaintiff had long before discussed with Defendant that Plaintiff was in the

12   business of real estate financing.  Defendant inquired whether Plaintiff would permit Defendant

13   to invest in Plaintiff's business.  Plaintiff responded that Defendant could invest.  Defendant

14   ultimately invested the sum of $750,000.  After making the investment, in or about mid 2005,

15   Defendant called Plaintiff and demanded return of his investment.  Plaintiff responded that

16   Plaintiff could not immediately return the full investment amount. After further discussions,

17   Plaintiff and Defendant agreed that Plaintiff would return the sum of $500,000 to Defendant, and

18   the remaining balance of $250,000 would reduce Defendant's promissory note obligation by

19   $250,000, to a new balance owing of $750,000.  Plaintiff did in fact return $500,000, and the

20   balance owing on Plaintiff's note was reduced to $750,000.

21        19.    In or about early December of 2007, Plaintiff contacted Defendant and reminded

22   him that the balance of $750,000 due on the promissory note was due and payable on December

23   31, 2007.  Defendant responded that since its been such a long time, that Plaintiff should just

24   forget the debt.  Defendant stated that since they were friends, he wanted to simply forget about

25   the past and asked Plaintiff to just let things go.  Plaintiff insisted that he was not going to simply

26   release the debt obligation and that he expected Defendant to pay on time, and that Defendant

27   should start go gather the money if he did not have it ready already.

28        20.    Several days thereafter, Plaintiff again called Defendant to check on the status of

- 7 -

payment. Defendant then told a story that he was now being sued by the Internal Revenue Service ("IRS") for failing to pay taxes, so he again asked Plaintiff to wait and not to take any action until the IRS matter was over.

## FIRST CAUSE OF ACTION

### [Breach of Contract Against Defendant KEITH KIM, and DOES 1-100]

21.    Plaintiff incorporates by this reference paragraphs 1 through 20 above as though set forth in full herein.

22.    As reflected in the written agreement herein, Plaintiff and Defendant entered into a written agreement wherein Defendant agreed to pay Plaintiff the sum of $1.0 million on or before December 31, 2007. This agreement was reached in consideration for Plaintiff's agreement to delay filing of his legal claims against Defendant. Plaintiff performed all terms and conditions imposed upon him, including delaying filing of a lawsuit, delaying receipt of an accounting of the financial records of BRAINRUSH, and permitting Defendant the full payment period before demanding payment. Plaintiff and Defendant also entered into an agreement to reduce the debt obligation to $750,000. Plaintiff honored that agreement and performed it as well. Defendant on the other hand breached the agreement by refusing to pay the agreed upon amount on the date due.

23.    As a direct and proximate result of the Defendant's breach, Plaintiff has suffered damages of no less than $750,000, loss of interest thereon, loss of profits from his original investment, and delay of his lawsuit against the Defendant and BRAINRUSH, as well as additional sums to be proven at the time of trial.

## SECOND CAUSE OF ACTION

### [Fraud/Intentional Misrepresentation Against All Defendants, except BV and BVM]

24.    Plaintiff incorporates by this reference paragraphs 1 through 23 above as though set forth in full herein.

25.    Plaintiff alleges that Defendant KEITH KIM made the following material representations to Defendant:

a.    When Plaintiff inquired as to when any profits from the $70 million sale

- 8 -

1    would be distributed, Defendant stated that all investors would have to wait a few

2    months for the company to prepare financial statements and records to document

3    the transaction and revenues.

4        b.    Several months later, and into the year 2001, Plaintiff made several

5    requests for the status of the financial records. Defendant's response was the

6    accounting had not yet been completed and to wait. Because Plaintiff and

7    Defendant had been friends for so long, Plaintiff had no reason to believe

8    Defendant's representations were false, and waited.

9        c.    In or about mid 2001, Defendant stated there were no profits from the $70

10   million transaction. Instead, Defendant represented the company had suffered

11   significant losses and the funds were used to offset those losses, so there was

12   nothing from the transaction left to distribute as profits to the investors.

13       d.    Defendant also stated that the company's CFO had lost the financial

14   records; therefore, Defendant could not provide Plaintiff with the requested

15   financial accounting. Over the course of several months, Plaintiff repeatedly

16   asked for the company financial documents; however, Defendant responded with

17   the same excuses for his continued delays, that the accounting had not been

18   completed because the CFO had lost the financial records. Defendant did provide

19   piecemeal documents, which documents were simply a few pages of bank

20   information, and prepared financial statement that had no supporting documents.

21       e.    Defendant represented to Plaintiff to induce Plaintiff not to sue because

22   the SEC was investigating Defendant that Defendant was using all of his financial

23   resources to pay for lawyer fees in response to the SEC investigation. Defendant

24   also repeated that it was not his fault that the financial records were not available

25   because the CFO had lost all of the records. Defendant also denied that he had

26   personally used or taken any money for his personal use, and further denied

27   DOUGLAS PARK's allegations that Defendant withdrew money to pay

28   DOUGLAS PARK a personal loan. Defendant asked Plaintiff, as a friend, to

- 9 -

believe what he was saying and not to sue. Defendant also offered that if Plaintiff agreed not to sue Defendant at that time, Defendant would give Plaintiff a promissory note, personally agreeing to repay Plaintiff his entire investment in full within five years.

26.     Plaintiff alleges that Defendant's statements were in fact false. At the time, Plaintiff did not have reason to suspect Defendant's representations were false at the time because all information regarding the company's finances were controlled, retained and remained in Defendant's possession at the time. Defendant was also Plaintiff's long time friend and Plaintiff had no reason to believe Defendant would be lying. However, after relying on Defendant's false representations and delaying filing a lawsuit, when Plaintiff demanded payment of his money pursuant to the promissory note, Plaintiff then first had reason to believe that he was a victim of fraud and that Defendant's plan from the outset was to defraud Plaintiff of his money, and further plan to defraud him to delay filing a civil lawsuit against Defendant.

27.     Because of Plaintiff's friendship and because all of the financial information was within Defendant's possession, Plaintiff relied on Defendant's representations and delayed filing a lawsuit, and also executed the promissory note. As a direct and proximate result of Plaintiff's reliance on Defendant's misrepresentations, Plaintiff suffered damages including but not limited to loss of his initial investment of $1.0 million, which was later reduced to $750,000, lost interest, and lost profits from the $70 million transaction,

28.     Defendants, and each of them, in committing the acts complained of herein, acted with the intent to defraud, with malice and with the intent to oppress the Plaintiff. Plaintiff is therefore entitled to the recovery of punitive and exemplary damages against each of the Defendants.

## THIRD CAUSE OF ACTION

### [Fraud/Failure to Disclose Material Facts/Breach of Fiduciary Duty Against All Defendants, except BV and BVM]

29..     Plaintiff incorporates by this reference paragraphs 1 through 28 above as though set forth in full herein.

- 10 -

30.     Plaintiff alleges that he was an investor /shareholder in the company known as BRAINRUSH, INC. Plaintiff alleges that Defendants and each of them were each directors, officers, and/or majority shareholders in said company. Therefore, as a result of said relationship, Plaintiff alleges that Defendants and each of them owed Plaintiff a fiduciary duty to disclose all material facts relating to Plaintiff's investment and further duty to avoid acting in a manner which would personally benefit themselves or their related entities at Plaintiff's expense..

31.     Among other things, Plaintiff alleges that Defendants had a duty to disclose and failed to disclose the following material facts: Defendants failed to disclose that one of the BRAINRUSH assets was going to be sold, failed to disclose the terms of the sale, failed to disclose the monies received from sale, failed to disclose the accounting for the sales proceeds, failed to disclose financial information as to the sale transaction and as to the entire company, failed to disclose that Defendants and each of them, had personally taken all or a portion of t,he sales proceeds and/or proceeds from Plaintiff's investments, failed to disclose that an officer was being investigated for securities fraud, failed to disclose that an officer was being sued/pursued for engaging in fraudulent transactions involving the sale of an unrelated business entity, failed to disclose their true intent not to return Plaintiff's investment, failed to disclose their true intent to delay Plaintiff from filing his lawsuit in order to hide, destroy, alter, destroy evidence of Defendants' fraudulent conduct as Plaintiff was waiting for payment on his note.

32.     Plaintiff reasonably and justifiably relied upon the representations and failure to disclose material facts to his detriment. Plaintiff did not have reason to know, and did not know, that the representations were in any way false, until December of 2007 when Plaintiff demanded timely payment of his money, and Defendant suggested to Plaintiff that since it was so long ago, that Plaintiff should just forget about the money. Had Plaintiff known of Defendant's securities violations at the time of his investment, he never would have invested. Had Plaintiff known that Defendant intended to delay Plaintiff with the promissory and had no true intent to repay Plaintiff, Plaintiff never would have delayed filing of a civil lawsuit and would not have executed a promissory note.

33.     As a direct and proximate result of his reasonable and justifiable reliance upon the

- 11 -

1  representations and/or failure to disclose material facts of Defendants and each of them, Plaintiff

2  has suffered damages. Plaintiffs damages include but is not limited to delaying filing of a civil

3  action to collect his damages at an earlier date, loss of his initial $1.0 million, less the agreed

4  upon reduction to $250,000, lost profits from the $70 million transaction, lost interest thereon as

5  well as all additional damages in a sum to be proven at the time of trial. Defendants, and each of

6  them, in committing the acts complained of herein, acted with the intent to defraud, with malice

7  and with the intent to oppress the Plaintiffs. Plaintiffs are therefore entitled to the recovery of

8  punitive and exemplary damages against each of the Defendants.

9                                    **FOURTH CAUSE OF ACTION**

10              **[Fraud/False Promise Against KEITH KIM and All DOE Defendants]**

11          34.    Plaintiff incorporates by this reference paragraphs 1 through 33 above as though set

12  forth in full herein.

13          35.    Plaintiff alleges that in making the false representations of facts set forth above, in

14  particular the representations made to induce Plaintiff to delay filing a civil lawsuit by way of the

15  promissory note, Defendants and each of them issued and made false promises, promises which

16  Defendants had no intent of performing at the time they were made. In specific, Plaintiff alleges

17  Defendant made false promises of intent to repay Plaintiff within 5 years, but in truth, had no

18  intent to repay Plaintiff, and instead, was only signing a promissory note to delay Plaintiff from

19  filing a civil lawsuit, to destroy evidence during the delay, and to prejudice Plaintiff in his rights

20  to later prosecute a cause of action against Defendant.

21          36.    As a direct and proximate result of his reasonable and justifiable reliance upon the

22  representations and/or failure to disclose material facts of Defendants and each of them, Plaintiff

23  has suffered damages. Plaintiffs damages include but is not limited to delaying filing of a civil

24  action to collect his damages at an earlier date, loss of his initial $1.0 million, less the agreed

25  upon reduction to $250,000, lost profits from the $70 million transaction, lost interest thereon as

26  well as all additional damages in a sum to be proven at the time of trial. Defendants, and each of

27  them, in committing the acts complained of herein, acted with the intent to defraud, with malice

28  and with the intent to oppress the Plaintiffs. Plaintiffs are therefore entitled to the recovery of

- 12 -

1  punitive and exemplary damages against each of the Defendants.

2  **FIFTH CAUSE OF ACTION**

3  **[Securities Violations Against all Defendants]**

4        37.    Plaintiffs incorporate by this reference paragraphs 1 through 36 above as though

5  set forth in full herein.

6        38.    Plaintiffs are informed and believe and based thereon allege that Defendants

7  KEITH KIM and DOUGLAS PARK, and each of the other Defendants were, at the time of the

8  acts alleged herein, persons who, directly or indirectly, controlled BRAINRUSH in that they

9  controlled or owned the largest single block of stock of such company, consisting of at least 25%

10  percent of the common stock, were each a principal member of the management of the corporate

11  entity in that they were officers, directors, or a person occupying a similar status to, or

12  performing similar functions of President, Chief Executive Officer, Chief Financial Officer or

13  Director of that organization. Plaintiff also alleges that all Defendants aided, abetted, and

14  conspired with each other to commit the unlawful acts complained of herein.

15        39.    Plaintiffs are informed and believe and based thereon allege that Defendants

16  KEITH KIM, DOUGLAS PARK, and STEVEN BOOKSPAN had access to material information

17  relative to BRAINRUSH which information would have materially affected Plaintiffs' decision

18  to purchase and to retain the securities at issue.

19        40.    In or about late 1999, Defendant solicited Plaintiff within the State of California

20  and while Plaintiff was in Los Angeles County to purchase shares, stock in BRAINRUSH.

21  Plaintiff alleges Defendants also omitted to state material facts necessary in order to make the

22  statements made in the communications, in light of the circumstances under which they were

23  made, not misleading. Among other things, Defendants and each of them failed to disclose that

24  they had personal transactions between them, including but not limited to a loan, which

25  transactions would be repaid from the revenues, profits and investments of BRAINRUSH.

26  Defendants also failed to disclose their intent to sell BRAINRUSH assets and thereafter to hide

27  the transactions from investors, and to further hide and withhold for their personal use, the

28  revenues from BRAINRUSH transactions. Had Plaintiff known and had it been disclosed to him

- 13 -

1  that Defendants and each of them had personal obligations between them that would be satisfied
2  from BRAINRUSH assets, income, revenues, profits, Plaintiff never would have invested.

3      41.    Plaintiff also alleges on that Defendants and each of them failed to qualify and
4  register the BRAINRUSH stock within the State of California for legal sale and distribution. As
5  a result of their failure to qualify the sale of the securities and any sale thereof should be deemed
6  null and avoid, and of no further force or effect.

7      42.    As a result of his reliance on the material misrepresentation and omissions of
8  material fact, Plaintiff has suffered damages. Plaintiff is entitled to rescind the above-described
9  purchase of securities and to restitution of their entire monies, including interest thereon. Plaintiff
10  tenders and/or before entry of judgment will tender to Defendants all shares or other security of
11  BRAINRUSH the above-described securities as purchased from Defendants

12      43.    Plaintiff further seeks full and complete restitution of all monies which were paid
13  to any or all of the Defendants as a direct result of the BRAINRUSH investment. Plaintiff seeks
14  restitution in an amount to be determined at the time of trial, which includes but is not limited to
15  the principal sum of $1.0 million, less agreed upon $250,000 offset, interest including
16  prejudgment interest, or any other transfers of any monies to Defendants or each of them.
17  Defendants, and each of them, in committing the acts complained of herein, acted with the intent
18  to defraud, with malice and with the intent to oppress the Plaintiffs. Plaintiffs are therefore
19  entitled to the recovery of punitive and exemplary damages against each of the Defendants.

20  **SIXTH CAUSE OF ACTION**

21  **[FRAUDULENT TRANSFERS Against All Defendants]**

22      44.    Plaintiff incorporates by this reference paragraphs 1 through 43 above as though set
23  forth in full herein.

24      45.    Plaintiff alleges that as a result of all of the facts and transactions alleged herein,
25  that Plaintiff was a creditor who had a right to receive payment from each and every Defendant.
26  Plaintiff further alleges that all Defendants, excluding BV and BVM at the time of the
27  transactions, were debtors, all of whom who are liable on one or more of Plaintiff's claims for
28  payment. Plaintiff alleges that Defendants KEITH KIM, DOUGLAS PARK, STEVEN

- 14 -

BOOKSPAN, and BRAINRUSH on the one hand were debtors who engaged in numerous acts constituting fraudulent transfers. Among other conduct, Plaintiff alleges that each of said Defendants incurred obligations and/or transferred some or all of their assets, including but not limited to investments, capital, equipment, stock, personal property, intellectual property, licenses, technologies, equity, and other things of value to Defendants BV and BVM, as well as other DOE Defendants, and that such transfers were made:

    a.    With actual intent to hinder, delay or defraud Plaintiff creditor;

    b.    Without receiving reasonably equivalent value in exchange for the transfer or obligation and were engaged or about to engage in a business or transaction for which the remaining assets of each Defendant debtor were unreasonably small in relation to the business or transaction and/or intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his or her ability to pay as they became due.

46.    Plaintiff alleges on information and belief that Defendants and each of them engaged in said fraudulent transfers with the actual intent to hinder, delay or defraud Plaintiff because:

    a.    The transfers were to insiders, or to entities owned and controlled by insiders;

    b.    Each Defendant debtor retained possession or control of the property ater the transfer;

    c.    The transfers were concealed from Plaintiff;

    d.    Just before the transfers were made, Defendants and each of them were threatened to be sued;

    e.    The transfer was of substantially all of each Defendant's assets;

    f.    All or some of Defendant debtors have absconded;

    g.    Defendants debtors have removed and concealed assets.

    h.    The value of the consideration received by the Defendant debtors was not reasonably equivalent to the value of the assets transferred;

    i.    The Defendant debtors were insolvent or became insolvent shortly after the

- 15 -

1    transfers were made;

2   j.    The transfers occurred before or shortly after a substantial debt was incurred,

3          among other things, the promissory note to Plaintiff;

4   47.    Plaintiff alleges that all of the alleged fraudulent transfers and/or obligations

5 occurred within four years of the filing of this lawsuit and/or occurred within one year after the

6 transfers were or reasonably could have been discovered by Plaintiff.

7   48.    As a direct and proximate result of the fraudulent transfers alleged herein,

8 Plaintiff has suffered damages, and seeks relief against defendants and each of them including

9 but not limited to; avoidance of the transfer to the extent necessary to satisfy Plaintiff's claim;

10 attachment or other provisional remedy against the assets transferred or its proceeds; an

11 injunction against further disposition by the Defendant debtors; appointment of a receiver to take

12 charge of the asset transferred or its proceeds; and all other relief as the court may deem the

13 circumstances require.

14

15    WHEREFORE, Plaintiff MICHAEL CHUNG prays for judgment in his favor and against

16 Defendants and each of them as follows:

17 **On the First Cause of Action:**

18   1.    For damages of no less than $750,000, plus interest thereon.

19 **On the Second, Third, Fourth and Fifth Causes of Action:**

20   1.    Compensatory damages of no less than $750,000, plus interest thereon;

21   2.    For rescission of all investment agreements and promissory note attached hereto,

22          and restitution of all sums paid by Plaintiff;

23   3.    For punitive and exemplary damages;

24 **On the Sixth Cause of Action:**

25   1.    For avoidance of the transfer to the extent necessary to satisfy Plaintiff's claim;

26          attachment or other provisional remedy against the assets transferred or its

27          proceeds; an injunction against further disposition by the Defendant debtors;

28          appointment of a receiver to take charge of the asset transferred or its proceeds;

- 16 -

1  and all other relief as the court may deem the circumstances require.

2  **On all causes of action:**

3      1.    That judgment be entered in favor of Plaintiff and against Defendants;

4      2.    That Plaintiff recover the costs of suit incurred herein;

5      3.    That Plaintiffs recover the sum of their reasonable attorneys fees pursuant to

6             contract and/or statute;

7      4.    That the Court order such other and further relief as it may deem just and proper.

8

9  DATED: May 29, 2008          HENRY M. LEE LAW CORPORATION

10

11  By: _____
          HENRY M. LEE
          Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

# PROMISSORY NOTE

$1,000,000                                                          November 1, 2002

     For value received, Keith J. Kim (the "<u>Debtor</u>") promises to pay to Michael Chung (the "<u>Holder</u>"), the principal sum of One Million Dollars ($1,000,000). This Note is subject to the following terms and conditions.

     1.    **Maturity.** This Note will automatically mature and be due and payable on December 31, 2007 (the "<u>Maturity Date</u>").

     2.    **Payment.** Except as set forth herein, all payments shall be made in lawful money of the United States of America at such place as the Holder hereof may from time to time designate in writing to the. This Note may be prepaid without the prior consent of the Holder.

     3.    **Transfer; Successors and Assigns.** The terms and conditions of this Note shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Notwithstanding the foregoing, the Holder may not assign, pledge, or otherwise transfer this Note without the prior written consent of the Debtor. Subject to the preceding sentence, this Note may be transferred only upon surrender of the original Note for registration of transfer, duly endorsed, or accompanied by a duly executed written instrument of transfer in form satisfactory to the Holder. Thereupon, a new note for the same principal amount and interest will be issued to, and registered in the name of, the transferee.

     4.    **Governing Law.** This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law.

     5.    **Notices.** Any notice required or permitted by this Note shall be in writing and shall be deemed sufficient upon delivery, when delivered personally or by a nationally-recognized delivery service (such as Federal Express or UPS), or forty-eight (48) hours after being deposited in the U.S. mail, as certified or registered mail, with postage prepaid, addressed to the party to be notified at such party's address as set forth below or as subsequently modified by written notice.

     6.    **Amendments and Waivers.** Any term of this Note may be amended only with the written consent of the Debtor. Any amendment or waiver effected in accordance with this Section 8 shall be binding upon the Debtor, the Holder and each transferee of the Note.

*[Signature Page Follows]*

417714v2.doc



IN WITNESS WHEREOF, the Debtor has caused this Note to be duly executed and delivered as of the date first above written.

**DEBTOR:**

Keith J. Kim

_____

**AGREED TO AND ACCEPTED:**

**MICHAEL CHUNG**

_____

**SIGNATURE PAGE TO PROMISSORY NOTE**

# EXHIBIT C

CIV-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Henry M. Lee, Bar No. 156041; Peter Choi, Bar No. 249482
HENRY M. LEE LAW CORPORATION
3530 Wilshire Boulevard, Suite 1710
Los Angeles, CA 90010
TELEPHONE NO.: (213)382-0955    FAX NO. *(Optional):* (213)382-0956
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Plaintiff: Michael Chung

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

DEC 3 0 2010

John A. Clarke, Executive Officer/Clerk

By _A Pergler_, Deputy
Anita Pergler

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: Michael Chung

DEFENDANT/RESPONDENT: Keith Kim, et al.

| REQUEST FOR (Application) | ✓ Entry of Default | ☐ Clerk's Judgment | CASE NUMBER: |
|---|---|---|---|
| | ☐ Court Judgment | | BC392047 |

1. TO THE CLERK: On the ~~complaint or cross-complaint filed~~ *first amended complaint filed*
   a. on *(date):* May 11, 2009
   b. by *(name):* Plaintiff: Michael Chung
   c. ☑ Enter default of defendant *(names):* KEITH KIM an individual

   d. ☐ I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names):*

      *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*
   e. ☐ Enter clerk's judgment
      (1) ☐ for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         ☐ Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) ☐ under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) ☐ for default previously entered on *(date):*

2. Judgment to be entered.

| | | Amount | Credits acknowledged | Balance |
|---|---|---|---|---|
| a. | Demand of complaint . . . . . . . . . . . | $ | $ | $ |
| b. | Statement of damages * | | | |
| | (1) Special . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| | (2) General . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| c. | Interest . . . . . . . . . . . . . . . . . . . | $ | $ | $ |
| d. | Costs *(see reverse)* . . . . . . . . . . . . | $ | $ | $ |
| e. | Attorney fees . . . . . . . . . . . . . . . . | $ | $ | $ |
| f. | TOTALS . . . . . . . . . . . . . . . | $ | $ | $ |
| g. | Daily damages were demanded in complaint at the rate of: $ | | per day beginning *(date):* | |

(* *Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.*)

3. ☐ *(Check if filed in an unlawful detainer case)* Legal document assistant or unlawful detainer assistant information is on the reverse *(complete item 4).*

Date: December 29, 2010
Peter Choi
_____
(TYPE OR PRINT NAME)                ▶ _____
                                    (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| FOR COURT USE ONLY | (1) ☒ Default entered as requested on *(date):* DEC 3 0 2010   John A. Clarke |
|---|---|
| | (2) ☐ Default NOT entered as requested *(state reason):* A. Pergler |
| | Clerk, by _____, Deputy |

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-100 [Rev. January 1, 2007]

**REQUEST FOR ENTRY OF DEFAULT**
(Application to Enter Default)

Code of Civil Procedure,
§§ 585–587, 1169
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: Michael Chung | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Keith Kim, et al. | BC392047 |

4. **Legal document assistant or unlawful detainer assistant** (Bus. & Prof. Code, § 6400 et seq.). A legal document assistant or unlawful detainer assistant ☐ did ☑ did not for compensation give advice or assistance with this form. *(If declarant has received any help or advice for pay from a legal document assistant or unlawful detainer assistant, state):*

   a. Assistant's name:        c. Telephone no.:
   b. Street address, city, and zip code:        d. County of registration:
      e. Registration no.:
      f. Expires on *(date):*

5. ☑ **Declaration under Code of Civil Procedure Section 585.5** *(required for entry of default under Code Civ. Proc., § 585(a)).* This action

   a. ☐ is ☑ is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).
   b. ☐ is ☑ is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).
   c. ☐ is ☑ is not on an obligation for goods, services, loans, or extensions of credit subject to Civ. Code, § 395(b).

6. **Declaration of mailing** (Code Civ. Proc., § 587). A copy of this *Request for Entry of Default* was

   a. ☐ **not mailed** to the following defendants, whose addresses are **unknown** to plaintiff or plaintiff's attorney *(names):*

   b. ☑ **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:
     (1) Mailed on *(date):* See attached P.O.S.    (2) To *(specify names and addresses shown on the envelopes):*
                                         Please see attached Proof of Service.

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date: December 29, 2010

Peter Choi
_____  ▶ _____
(TYPE OR PRINT NAME)  (SIGNATURE OF DECLARANT)

7 **Memorandum of costs** *(required if money judgment requested).* Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):

   a. Clerk's filing fees .............. $
   b. Process server's fees ............... $
   c. Other *(specify):* $
   d. ........................... $
   e. TOTAL ........................... $
   f. ☐ Costs and disbursements are waived.
   g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____  ▶ _____
(TYPE OR PRINT NAME)  (SIGNATURE OF DECLARANT)

8. ☐ **Declaration of nonmilitary status** *(required for a judgment).* No defendant named in item 1c of the application is in the military service so as to be entitled to the benefits of the Servicemembers Civil Relief Act (50 U.S.C. App. § 501 et seq.).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____  ▶ _____
(TYPE OR PRINT NAME)  (SIGNATURE OF DECLARANT)

**REQUEST FOR ENTRY OF DEFAULT**
**(Application to Enter Default)**

**PROOF OF SERVICE**

1

2     I am employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within action. My business address is **3530 Wilshire Blvd, Suite 1710, Los Angeles, CA 90010**. On **December 29, 2010**, I mailed the foregoing document described as:

3

4 **REQUEST FOR ENTRY OF DEFAULT**

5 on the parties in this action by mail by placing a true copy thereof in a sealed envelope addressed as follows:

6

7 Keith Kim                                     Douglas Park
6017 La Salle Ave.                 11 Buckskin Rd.
Oakland, CA 94611              Bell Canyon, CA 91307

8

9 Lottie Cohen, Esq.                 Brainrush, Inc.
Law Offices of Lottie Cohen      11 Buckskin Rd.
3637 Motor Avenue, Suite 360    Bell Canyon, CA 91307

10 Los Angeles, CA 90034

11 Brainrush Ventures, LLC         Brainrush Ventures Management, LLC
11 Buckskin Rd.                     11 Buckskin Rd.

12 Bell Canyon, CA 91307          Bell Canyon, CA 91307

13     I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with

14 postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. The above envelope was sealed and place for collection and mailing on the above date following our

15 ordinary business practices. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit

16 for mailing in affidavit.

17 Executed on **December 29, 2010** at Los Angeles, California.

18

19 **(X)** (State)I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20 ( ) (Federal)I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

21

22

23 Diana Kang                                      Signature
Name

24

25

26

27

28

-1-

# EXHIBIT D

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:
Henry M. Lee, Bar No. 156041; Robert Myong, Bar No. 262097
Henry M. Lee, Law Corporation
3530 Wilshire Blvd., Suite 1710, Los Angeles, CA 90010
TELEPHONE NO.: (213) 382-0955    FAX NO. *(Optional)*: (213) 382-0956
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiff, Michael Chung

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District, Stanley Mosk Courthouse

PLAINTIFF: Michael Chung

DEFENDANT: Keith Kim, et al.

**FOR COURT USE ONLY**

ORIGINAL FILED

OCT 20 2011

LOS ANGELES
SUPERIOR COURT

| | JUDGMENT | |
|---|---|---|
| ☐ By Clerk | ☑ By Default | ☐ After Court Trial |
| ☑ By Court | ☐ On Stipulation | ☐ Defendant Did Not Appear at Trial |

CASE NUMBER: BC392047

**JUDGMENT**

1. ☑ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☑ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☑ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court    ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time)*:
      before *(name of judicial officer)*:
   b. Appearances by:
      ☐ Plaintiff *(name each)*:          ☐ Plaintiff's attorney *(name each)*:
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each)*:          ☐ Defendant 's attorney *(name each)*:
         (1)                                 (1)
         (2)                                 (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐ A statement of decision (Code Civ. Proc., § 632)    ☐ was not    ☐ was    requested.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

**JUDGMENT**

Code of Civil Procedure, §§ 585, 664.6

| PLAINTIFF: Michael Chung | CASE NUMBER: |
|---|---|
| DEFENDANT: Keith Kim, et al. | BC392047 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:** ☐ THE COURT ☐ THE CLERK

4. ☐ **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. ☑ for plaintiff (name each):
Michael Chung
and against defendant (names):
Douglas Park, an individual
☐ Continued on Attachment 5a.

b. ☐ for defendant (name each):

c. ☐ for cross-complainant (name each):
and against cross-defendant (name each):
☐ Continued on Attachment 5c.

d. ☐ for cross-defendant (name each):

6. **Amount.**

a. ☑ Defendant named in item 5a above must pay plaintiff on the complaint:

| | | |
|---|---|---|
| (1) ☑ | Damages | $ 750,000.00 |
| (2) ☑ | Prejudgment interest at the annual rate of        % | $ 283,151.44 |
| (3) ☑ | Attorney fees | $ Per Motion |
| (4) ☑ | Costs | $ 455.00 |
| (5) ☐ | Other (specify): | $ |
| (6) | TOTAL | $ 1,033,606.40 |

c. ☐ Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | |
|---|---|---|
| (1) ☐ | Damages | $ |
| (2) ☐ | Prejudgment interest at the annual rate of        % | $ |
| (3) ☐ | Attorney fees | $ |
| (4) ☐ | Costs | $ |
| (5) ☐ | Other (specify): | $ |
| (6) | TOTAL | $ |

b. ☐ Plaintiff to receive nothing from defendant named in item 5b.
☐ Defendant named in item 5b to recover costs $
☐ and attorney fees $

d. ☐ Cross-complainant to receive nothing from cross-defendant named in item 5d.
☐ Cross-defendant named in item 5d to recover costs $
☐ and attorney fees $

7. ☐ Other (specify):

Date: OCT 2 0 2011

☐ _____
ALAN S. ROSENFIELD
JUDICIAL OFFICER

Date: ☐ Clerk, by _____, Deputy

---

**CLERK'S CERTIFICATE** (Optional)

(SEAL)

I certify that this is a true copy of the original judgment on file in the court.

Date:

Clerk, by _____, Deputy

Page 2 of 2

JUD-100 [New January 1, 2002]          **JUDGMENT**

 In re Keith J. Kim and Janice S. Kim; Michael Chung v. Keith Kim, et al.; Case No.: 11-bk-49539
leelawcorpdia
to:
John_Bolts
11/28/2011 03:00 PM
Cc:
leelawcorp, leelawcorprobert, Leelawcorplucie
Show Details

2 Attachments

                                    

Adversary Proceeding Cover Sheet.pdf  Complaint to Determine Dischargeability of Debt.pdf

Dear Mr. Bolts:

Per our telephone conversation this afternoon, please file the Adversary Proceeding Cover Sheet and Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. Section 523(a)(2) and (4) for the above referenced matter.  Should you have any questions, please contact this office.  Thank you.

Diana Kang
Secretary to Robert Myong
HENRY M. LEE LAW CORPORATION
3530 Wilshire Boulevard, Suite 1710
Los Angeles, CA 90010
Tel. (213) 382-0955
Fax (213) 382-0956

CONFIDENTIALITY NOTICE: The information contained in this e-mail is transmitted by an attorney and/or staff. It is privileged and confidential, and intended only for the use of the individual(s) named above. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copy of this information is strictly prohibited. If you have received this e-mail in error, please notify us immediately by telephone at (213) 382-0955 or by return e-mail, and delete this e-mail and all attachments from your system. Thank you.